NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRUCO LIFE INSURANCE COMPANY;<br><br>Plaintiff,<br><br>v.<br><br>DENISE BINDAY KOSLOWSKY, R. BINDAY PLANS & CONCEPTS, LTD., WELLS FARGO BANK, N.A., as Securities Intermediary, and John Does 1-10,<br><br>Defendants. | Civil Action No.: 14-03976 (CCC)(JBC)<br><br>**OPINION** |

**CECCHI, District Judge.**

Before the Court is the Motion of defendants Denise Binday Koslowsky ("Koslowsky") and R. Binday Plans & Concepts, Ltd. ("Binday Plans") (collectively, the "Binday Defendants") to Dismiss all claims asserted against them in the Complaint filed by Plaintiff Pruco Life Insurance Company ("Plaintiff") pursuant to Rule 12(b)(6) of The Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (ECF No. 17). The Court decides the Motion without oral argument pursuant to Rule 78.[1] Having considered the parties' submissions and for the reasons set forth below, the Court denies Defendants' Motion to Dismiss.

## I.   BACKGROUND

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

This action commenced on June 20, 2014 when Plaintiff filed a Complaint against the Binday Defendants as well as non-moving co-Defendant Wells Fargo Bank, N.A. as a Securities Intermediary ("Wells Fargo"). (See generally Compl., ECF No. 1). Plaintiff asserts claims against the Binday Defendants for fraud, conspiracy, breach of contract, negligent misrepresentation, and violations of the New Jersey Fraud Prevention Action N.J.S.A. 17:33A-1, *et seq*. Plaintiff also seeks a declaratory judgment that the life insurance policy at issue in this case be found void ab initio and rescinded. (Compl. ¶ 18). Plaintiff alleges that the Binday Defendants engaged in a scheme whereby a life insurance policy was obtained through Plaintiff on behalf of Martha Espinal ("Ms. Espinal") with the intention and understanding that the policy would be sold to investors lacking an insurable interest in Ms. Espinal's life. Presently, the Binday Defendants move to dismiss the claims against them arguing that (1) each claim is barred by the applicable statute of limitations, (2) Plaintiff has not alleged an entitlement to relief under any cause of action; and (3) Plaintiff has not, and will not, suffer any damages as a result of the Binday Defendants' alleged conduct.

### A.  Allegations

According to the Complaint, in or around May, 2007, the Binday Defendants and non-party Michael Binday solicited Ms. Espinal to procure from Plaintiff a stranger-originated life insurance ("STOLI") policy. (See Compl. ¶¶ 24, 25). At this time, Koslowsky was an independent, non-exclusive insurance producer appointed to sell life insurance products for Plaintiff. (See Compl. ¶¶ 32, 34). Binday Plans was a broker general agency that acted as an intermediary between independent insurance producers, such as Koslowsky, and insurance carriers, such as Plaintiff. (See Compl. ¶ 33). As part of the alleged scheme, Ms. Espinal purchased a life insurance policy, containing a death benefit in the amount of $4,000,000, issued by Plaintiff through Binday Plans

and Koslowsky. (See Compl. ¶ 25). However, Plaintiff alleges that the beneficial interest in this life insurance policy was always intended to be sold to a third-party investor in the secondary market for life insurance. (See Compl. ¶¶ 31, 39). As such, Ms. Espinal, her estate, and her named beneficiary would not receive the death benefit from the policy upon Espinal's death. (See Compl. ¶ 42). Instead, Ms. Espinal would receive monetary compensation from the sale of her insurance policy on the secondary market based upon a percentage of the face amount of the policy. (See Compl. ¶ 25, 25, 38, 42). Allegedly, the Binday Defendants benefited from this scheme by receiving commissions from Plaintiff for securing this life insurance policy that would not have issued but for their allegedly fraudulent scheme. (Compl. ¶¶ 25, 31, 63, 83, 90).

The Complaint alleges that to secure this life insurance policy, the Binday Defendants made numerous fraudulent and material misrepresentations in connection with the application for the policy. (See Compl. ¶ 26). In the application, Koslowsky allegedly represented to Plaintiff that the purpose for the policy was "capital preservation" and "estate liquidation," and the amount of the policy was determined using an "estate analysis." (See Compl. ¶ 49). The Complaint also alleges that Koslowsky falsely represented to Plaintiff that Ms. Espinal's "current income or savings account" would be the source of payment of initial and future premiums for the policy. (See Compl. ¶ 50). Plaintiff alleges that Koslowsky falsely represented to Plaintiff that Ms. Espinal had an earned annual income of $200,00, an unearned annual income of $200,000, and a net worth of $4,935,600. (See Compl. ¶ 51). Finally, the Complaint alleges that Ms. Espinal's son, Stephen Espinal ("Mr. Espinal"), was listed on the application as the intended beneficiary of the proposed policy. In reliance upon these allegedly false representations, Plaintiff issued a $4,000,000 life insurance policy on the life of Ms. Espinal on December 10, 2007. (See Compl. ¶¶ 49, 52, 53). According to the Binday Defendants, Plaintiff terminated for cause its agency

3

relationship with Binday Plans and Michael Binday through a letter dated February 14, 2008. (See Declaration of Debra Miller Krebs ("Krebs Decl."), Exhibit B, ECF No. 17-3).

### B.   Trial of Michael Binday

On or about February 15, 2012, Michael Binday was indicted in the Southern District of New York on charges of conspiracy to commit mail fraud and wire fraud. See U.S. v. Binday, No. 12-CR-00152 (S.D.N.Y.); see also Compl. ¶ 62. The indictment alleged that Michael Binday and his co-defendants engaged in the practice of submitting and placing fraudulent STOLI policies with a number of life insurance carriers. (See Compl. ¶ 63). The indictment also alleged that Michael Binday received significant monetary compensation in exchange for the premiums paid under those policies. (See id.) Michael Binday's trial began on September 17, 2013, and Mr. Espinal testified on behalf of the prosecution beginning on September 24, 2013. (See Compl. ¶¶ 65, 66). As part of his testimony, Mr. Espinal proffered the following testimony as to his mother's finances: (1) Ms. Espinal's only source of income was $720 a month from social security benefits; (2) between 2007 and 2013, Ms. Espinal did not own any significant assets and held only approximately $700 in her bank account; and (3) statements that Ms. Espinal had an annual earned income of $200,000 and a net worth of $4,935,600 were false. (See Compl. ¶ 67).

In addition, Mr. Espinal offered testimony regarding the circumstances giving rise to Ms. Espinal submitting the application that resulted in the life insurance policy disputed here: (1) Mr. Binday and others solicited Ms. Espinal to participate in the procurement of a multi-million dollar STOLI policy; (2) Ms. Espinal would not incur any out of pocket costs and would not be responsible for paying the premiums on this policy; (3) Mr. Binday sent Ms. Espinal several life insurance policy applications for Ms. Espinal's signature, which she signed and returned; (4) neither Mr. nor Ms. Espinal filled out the portions of the applications relating to Ms. Espinal's

finances; and (5) Ms. Espinal signed several applications with the hope and expectation that she would receive compensation for the sale of each policy. (See Compl. ¶ 68). Based on this testimony as well as other evidence, Michael Binday was convicted on all counts on October 7, 2013. (See Compl. ¶ 69).

Plaintiff alleges that prior to Mr. Espinal's testimony and Michael Binday's conviction, Plaintiff had been unaware of the intentions of the Binday Defendants with respect to the procurement of the STOLI policy and the allegedly fraudulent misrepresentations made in regards to Ms. Espinal's income and net worth. (See Compl. ¶ 70). Plaintiff also alleges that the Binday Defendants "conceal[ed] their fraudulent conduct." (Comp. ¶¶ 26, 93, 94, 100). Plaintiff alleges that it commenced this action by filing the Complaint on June, 20, 2014 upon becoming aware of these alleged facts.

## II.   LEGAL STANDARD

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded allegations in the Complaint as true and to draw all reasonable inferences in favor of the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d

5

203, 211 (3d Cir. 2009).

Rule 9(b) provides that "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud . . . ." In meeting the particularity requirements of Rule 9(b), a plaintiff must plead "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). While a plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation," Lum v. Bank of America, 361 F.3d 217, 223–24 (3d Cir.2004), a plaintiff "need not ... plead the date, place or time of the fraud, so long as they use an alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Campmor, Inc. v. Brulant, LLC, No. 09–5465, 2010 WL 1381000, *7 (D.N.J. April 1, 2010) (quoting Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir.1998). Because certain aspects of an alleged fraud may have been concealed by a defendant, courts apply Rule 9(b) "with some flexibility." Ramirez v. STi Prepaid LLC, 644 F.Supp.2d 496, 502 (D.N.J.2009) (quoting Rolo, 155 F.3d at 658). As the Third Circuit has explained:

> While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. Nevertheless, even when the defendant retains control over the flow of information, "boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."

In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d. Cir.2002) (quoting In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997)) (internal citations omitted).

### III. DISCUSSION

The Binday Defendants move to dismiss the claims against them arguing that (1) each claim is time-barred by the applicable statute of limitations, (2) Plaintiff's claims create a legal inconsistency that preclude their entitlement to relief, and (3) Plaintiff has not, and will not, suffer any damages as a result of the Binday Defendants' alleged conduct. (Defs' Br. in Supp., ECF No. 17-4). For the reasons set forth below, the Court will deny Defendants' motion.

#### A. Plaintiff Has Not Pled Itself Out of Court

Plaintiff asserts New Jersey state law claims against Defendants for fraud, conspiracy, breach of contract, and negligent misrepresentation. (See Compl. ¶¶ 71-107). It is well-settled New Jersey law that a six-year statute of limitations applies to causes of action for the present claims. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 425 (3d Cir. 1999); N.J.S.A. 2A:14-1. Under the discovery rule, a statute of limitations does not begin to accrue until the earlier of the two dates on which a plaintiff knew or should have known of the facts giving rise to the cause of action. See Lopez v. Swyer, 62 N.J. 267, 272, 300 A.2d 563, 565 (1973) ("a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim").

Plaintiff argues, and the Binday Defendants do not appear to dispute, that generally the discovery rule is available to toll the statute of limitations for each claim asserted in the Complaint. (Pl.'s Br. in Opp. at 10-14). The New Jersey Supreme Court has applied the discovery rule in a claim for fraud. See Lopez v. Swyer, 300 A.2d 563, 567 n.2 (N.J. 1973) ("In case of fraud the

period of limitation, in equity, begins to run only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered."). In <u>Dique v. New Jersey State Police</u>, 603 F.3d 181 (3d Cir. 2010), the Third Circuit recognized that the New Jersey statute of limitations for a conspiracy claim did not accrue until the plaintiff became aware of his injury. See also <u>Pierce v. Rossetta Corp.</u>, No. CIV. A. 88-5873, 1991 WL 52720, at *5 (E.D. Pa. Apr. 5, 1991) ('[t]he filing of the civil conspiracy claim was timely due to the operation of Pennsylvania's . . . 'discovery rule'"). The discovery rule likewise is available for breach of contract and negligent misrepresentation claims. See <u>Gibbins v. Kosuga</u>, 296 A.2d 557, 560 (N.J. Super. Ct. Ch. Div. 1972). Thus, the discovery rule is generally available to rebut a statute of limitations affirmative defense for all of the claims asserted against Defendants.

While a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. <u>Schmidt v. Skolas</u>, 770 F.3d 241, 251 (3d Cir. 2014). Generally, a plaintiff "need not anticipate Defendants' affirmative defenses." <u>Valenti v. Maher Terminals LLC</u>, No. CIV.A. 14-7897 JLL, 2015 WL 3965645, at *4 (D.N.J. June 30, 2015) (citing <u>Schmidt</u>, 770 F.3d at 251). The Third Circuit has repeatedly held that a complaint should be dismissed under Rule 12(b)(6) only when a plaintiff essentially "plead[s] himself out of court" by alleging facts that make it clear on its face that the statute of limitations has run. See <u>Schmidt v. Skolas</u>, 770 F.3d 241, 251 (3d Cir. 2014); <u>see also</u> <u>Brawner v. Education Management Corp.</u>, 513 F. App'x 148 (3d Cir. 2013). An exception to this general rule exists "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the complaint . . . ." <u>Schmidt</u>, 770 F.3d at 249. When a plaintiff does so, he effectively "plead[s] himself out of court."

Schmidt, 770 F.3d at 252. However, where "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir. 2011).

The Binday Defendants argue that Plaintiff had actual knowledge of the alleged scheme no later than February 14, 2008, and therefore Plaintiff's cause of action expired no later than February 14, 2014. (See Defs' Br. in Supp. at 7). For support, the Binday Defendants attached as "Exhibit B" to its motion to dismiss a document purporting to be a letter from Plaintiff terminating non-party Michael Binday "for cause." (Krebs Decl., Ex. B, ECF No. 17-3). However, the Binday Defendants do not appear to provide a statement of law or cite a case standing for the proposition that a district court may consider such a document when deciding a motion to dismiss under Rule 12(b)(6). Instead, this Court is guided by the long-established principle that "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pens. Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).[2] An exception to this general rule exists where a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). Here, Exhibit B is not an integral document because Plaintiff does not rely upon it in the Complaint. See Schmidt, 770 F.3d at 249 (finding affidavits and press releases submitted by defendants not integral because

---

[2] The Court notes that Defendants urge this Court to take judicial notice of New York Department of Financial Services "case number CSB-595895" purportedly showing "the information known to Plaintiff at the time." (Defs' Br. in Supp. at 7). However, Defendants do not state precisely what information that "case" discloses, nor did they submit any documents from that proceeding.

9

complaint was not based upon them). Therefore, the Court will not consider Exhibit B for the purposes of this motion.

Looking only to the dates stated in the Complaint, Plaintiff alleges that prior to Mr. Espinal's testimony on September 24, 2013 and Michael Binday's conviction on October 7, 2013, Plaintiff had been unaware of the fraudulent misrepresentations made in Ms. Espinal's application for a life insurance policy. (See Compl. ¶¶ 65-70). Plaintiff also repeatedly alleges that the Binday Defendants "conceal[ed] their fraudulent conduct." (Comp. ¶¶ 26, 93, 94, 100). Even taking the earliest pleaded date of discovery possible, in this case September 24, 2013, Plaintiff is not facially barred by the statute of limitations because it filed the Complaint less than nine (9) months later on June 20, 2014–well in advance of the six (6) year statute of limitations for the claims asserted. See Schmidt, 770 F.3d at 252 ("nothing in [Plaintiff]'s complaint clearly suggests that he did in fact have knowledge of the full scope of his injury prior to [the dispositive statute of limitations date]."). Thus, Plaintiff has not pleaded itself out of court because the Complaint explicitly alleges that (1) Plaintiff did not know of the alleged conduct giving rise to its claims until either September 24 or October 7, 2013 and (2) Defendants took steps to actively "conceal their fraudulent conduct." These alleged facts support the application of the discovery rule because the Complaint, taken as true, alleges that Plaintiff neither knew nor could have known about the underlying conduct prior to September 24, 2013. See Lopez, 62 N.J. at 272 (cause of action does not accrue until the injured party discovers or should have discovered that he may have a basis for an actionable claim). Therefore, the Court will deny Defendants' motion to dismiss based on statute of limitations.

### B. Plaintiff Has Plausibly Pled a Claim for Entitlement to Relief

Defendants appear to argue Plaintiff's claims create a "logical inconsistency" that can only lead to the conclusion that Plaintiff is not entitled to relief. (Defs' Br. in Supp. at 7-8; Reply at 9).

Defendants' argument hinges on the alleged "material misrepresentation" element of each claim.[3] Defendants' theory is twofold. First, Defendants contend, if Plaintiff is ultimately successful as to the claim for rescission in Count 1 of the Complaint, which requires establishing material misrepresentation, then Plaintiff will be entitled to rescind Ms. Espinal's STOLI policy ab initio. (Defs' Br. in Supp. at 8 (citing N.J.S.A. 17B:23-3(d); Mass. Mut. Life. Ins. Co. v. Manzo, 122 N.J. 104, 111-13 (1991))). Defendants further reason that if Plaintiff is entitled to rescind and does rescind the STOLI policy, Plaintiff will have suffered no damages because it will never be obligated to pay out the STOLI policy upon Ms. Espinal's death. The second link in Defendants' theory is that if Plaintiff is ultimately unsuccessful in establishing the material misrepresentation element, then Plaintiff cannot establish any claim against Defendants. Thus, Defendants argue that in either situation—whether Plaintiff ultimately prevails in establishing the material misrepresentation element or fails to do so—Plaintiff will not be entitled to relief. Defendants appear to believe they have uncovered a legal paradox where a claim for rescission cannot co-exist with claims for fraud, negligent misrepresentation, conspiracy, and breach of contract.

First, Defendants reasoning does not hold up because the present motion seeks to dismiss the Complaint in its entirety, thus depriving Plaintiff with a forum to litigate its claim for rescission. Second, Defendants do not appear to argue that if Plaintiff is successful as to Count 1 then it would be compelled to rescind the STOLI policy. Thus, Defendants' argument also fails at the outset because their reasoning hinges on Plaintiff not having any choice in what remedy it receives.

---

[3] Defendants concede that material misrepresentation is not an element of a breach of contract claim, however they argue that the basis for Plaintiff's breach of contract claim includes an allegation that Koslowsky represented to Plaintiff that she would not make "any misrepresentation." (Defs' Br. in Supp. at 8; Krebs Decl., Exhibit A, ¶ 97).

11

Third, Defendants do not cite to any authority standing for the proposition that a successful litigant that rescinds a contract cannot also recover damages for other claims. To the contrary, at least one district court has found that claims for rescission and fraud in the context of a STOLI policy can survive a motion to dismiss if each claim is properly pleaded independently. See Penn Mut. Life Ins. Co. v. Wolk, 739 F. Supp. 2d 387 (S.D.N.Y. 2010). Defendants' argument is, at best, premature because the Court need only determine whether the alleged facts plausibly support the claims asserted.

This Court is also guided by the well-settled law that the Federal Rules of Civil Procedure support alternative and even inconsistent pleadings. See Am. Gen. Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman, No. CIV. A. 08-399 (GEB), 2009 WL 5214027, at *6 (D.N.J. Dec. 22, 2009). Rule 8(d)(3) expressly states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." (emphasis added); see also Sotheby's, Inc. v. Minor, No. 08 Civ. 7694, 2009 WL 3444887, at *5 (S.D.N.Y. Oct. 26, 2009) (inconsistencies at the pleading stage are permitted and do not render a complaint futile); Flaster/Greenberg P.C. v. Brendan Airways, LLC, Civil Action No. 08-4333, 2009 WL 1652156, at *7 (D.N.J. Jun 10, 2009) (same); Navigant Consulting, Inc. v. Kostakis, No. CV-07-2302, 2007 WL 2907330, at *4 (E.D.N.Y. Oct. 4, 2007) (finding that tort and rescission claims can be pled simultaneously). Defendants do not appear to argue that Plaintiff has not sufficiently pled "material misrepresentation." Therefore, because Plaintiff is permitted under the Federal Rules of Civil Procedure to plead inconsistent or contradictory claims, Defendants' motion to dismiss on these grounds will be denied.

### C.     Plaintiff Has Alleged Damages

The Binday Defendants argue that the Complaint should be dismissed against them because Plaintiff has not adequately pled damages. (Defs' Br. in Supp. at 6-9). The parties appear to agree

that Plaintiff's causes of action against the Binday Defendants require the Complaint to sufficiently plead damages. See, e.g. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (damages are a required element of common-law fraud); Banco Popular N. Am. V. Gandi, 184 N.J. 161, 177 (2005) (damages are a required element of civil conspiracy); Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 126-27 (D.N.J. 2003) (damages are a required element of negligent misrepresentation). The Complaint alleges damages in the form of (1) commissions paid to the Binday Defendants for their roles in procuring Ms. Espinal's life insurance policy (Compl. ¶¶ 25, 31, 57), (2) administrative costs and expenses associated with the issuance and maintenance of the policy (Compl. ¶¶ 83, 90, 95, 101), and (3) attorneys' fees that Plaintiff has incurred as a result of the Binday Defendants' conduct (Compl. ¶¶ 90, 95, 101, 107). For the reasons set forth below, the Court finds Plaintiff has adequately pled damages and will deny Defendant's motion to dismiss.[4]

Defendants' theory is based on the assertion that Plaintiff has received $1,044,146.00 in premium payments for Ms. Espinal's STOLI policy, yet it has paid only $242,461.12 in commissions to the Binday Defendants. (Compl. ¶¶ 56-57). Defendants reason that Plaintiff has "net" earnings of $801,684.98, and therefore has not suffered any damages. (Defs' Br. in Supp. at 9). Defendants further argue that the monetary commissions insurance companies generally pay to brokers in connection with the sale of a policy are "simply an expected part of the transaction" and "not a damage." For additional support, Defendants cite several cases from the early 20th and

---

[4] The parties dispute whether attorneys' fees are a sufficient form of damages and whether they are available to Plaintiff. Because the Court finds Plaintiff has sufficiently pled a basis of damages independent of attorneys' fees, the Court declines to rule on the availability of attorneys' fees at this time.

late 19th centuries purportedly standing for the proposition that "an insurance policy taken out by one upon the life of another, in whose life the policy holder has no insurable interest, will not be void, either as prohibited by our laws or as opposed to public policy." (Defs' Reply at 11 (citing Vivar v. Supreme Lodge K.P., 52 N.J.L. 455, 469 (Sup. Ct. 1890); Travelers' Ins. Co. v. Morris, 115 N.J. Eq. 142, 145 (1934); Meyers v. Schumann, 54 N.J. Eq. 414 (1896)). Although those cases are helpful in understanding the historical development of insurance law in the context of STOLI policies, this Court finds contemporary and factually similar cases to be more helpful.

District courts have analyzed the requirements of Rule 9(b) for damages as they relate to misrepresentations and/or omissions made in the application process for life insurance. In Kramer v. Lockwood Pension Servs., Inc., the court found that the plaintiff did not sufficiently plead damages because the plaintiff's "only injury . . . resulted from [defendant insured's] alleged noncompliance with New York Insurance Law." 653 F. Supp. 2d 354, 378-80 (S.D.N.Y. 2009). The Kramer court surmised that the plaintiff's allegation in the complaint that the life insurance policy "would not have issued but for [defendant's] misrepresentation" was insufficient under Rule 9(b). Id. at 379 (quoting the complaint). Shortly after Kramer, another court in the Southern District of New York denied a motion to dismiss the plaintiff's common law fraud claim stemming from an alleged STOLI scheme where the plaintiff pled damages by alleging that it had "incurred substantial damages . . . including . . . costs and expenses associated with the issuance of the [policy]." Penn Mut. Life Ins. Co. v. Wolk, No. 09 Civ. 1808, 2010 WL 2594876 at *6 (S.D.N.Y. June 28, 2010). The court held that the plaintiff adequately pled fraud, including damages, and denied defendant's motion to dismiss that claim. Id.

Consistent with the Wolk court, at least one court in the District of New Jersey has held that the damages element of a fraud claim in an alleged STOLI scheme is sufficiently pled when

it alleges "damages consisting of not just the future damages it will incur . . . but also 'substantial damages as a result of Defendants' wrongful conduct, including . . . costs and expenses associated with the issuance of the Policies.'" Lincoln Nat. Life Ins. Co. v. Schwarz, No. CIV.A. 09-03361 FLW, 2010 WL 3283550, at *15 (D.N.J. Aug. 18, 2010) (quoting the operative complaint). The present motion to dismiss is squarely aligned with the Wolk and Schwarz decisions. Here, Plaintiff has alleged damages resulting from Defendants' conduct in the form of commissions, costs, and expenses associated with issuing and maintaining the STOLI policy. (Compl. ¶¶ 25, 31, 57 83, 90, 95, 101). The Complaint goes far beyond simply alleging that Plaintiff suffered damages merely because it would not have issued the policy but for Defendant's conduct, which the Kramer court found inadequate under Rule 9(b). See Kramer, 653 F. Supp. 2d at 378-80. The Court therefore finds that, consistent with recent case law in this and at least one other district court, Plaintiff has adequately pled damages.

## IV.   CONCLUSION

For the foregoing reasons, the Moving Defendants' Motion to Dismiss is denied. An appropriate Order accompanies this Opinion.

DATED: July 31, 2015

**CLAIRE C. CECCHI, U.S.D.J.**